UNITED STATES FEDERAL DISTRICT COURT
DISTRICT OF NEBRASKA

| **ROSS F. TREMAINE**, Plaintiff, | Case No. 8:16-cv-488 |
|---|---|
| v. | |
| **GOODWILL INDUSTRIES, INC.**, a Nebraska nonprofit corporation, Defendant. | **COMPLAINT** (Jury Trial Demanded) |

## INTRODUCTION

1. Plaintiff Ross F. Tremaine ("Mr. Tremaine") is a 49-year-old male, born April 18, 1967. Defendant Goodwill Industries, Inc. ("Goodwill") hired Mr. Tremaine as a Facilities Manager beginning October 15, 2011 and later promoted him to Facilities Director. When Goodwill promoted Mr. Tremaine to Facilities Director, he became a member of the executive staff.

2. As Goodwill's Facilities Director, Mr. Tremaine's job performance was exceptional throughout his employment. He received positive annual reviews and never was disciplined for his performance. Mr. Tremaine was paid significantly less than two (2) younger female members of the executive staff. Director of Retail Shannon McGree ("McGree"), and Director of Business Development Erin Swanson-Russell ("Swanson-Russell") may have had different job titles and supervisors, but the three individuals each had company-wide responsibilities and were all executive staff members.

4. In March 2015, Mr. Tremaine met with Randy Parks ("Parks"), then Goodwill's Chief Operating Officer, McGree, Sr. Director of Risk Management Kent

Caniglia ("Caniglia"), Sr. Director of Retail Kay Hilgenkamp ("Hilgenkamp"), District Manager Rose Sloderbeck ("Sloderbeck"), District Manager Neil Ellis ("Ellis"), and Maintenance Manager Brett Karnes ("Karnes") to recommend that Goodwill temporarily close its West Center retail location at 8310 Spring Street ("West Center Store"). Mr. Tremaine advised the group of an inspection by pest control professionals which revealed the West Center Store was infested with bed bugs. Mr. Tremaine recommended the store be closed until the pest control professionals treated the bed bug infestation because it posed a threat to the public and constituted a public health violation. Parks ignored the advice. Instead, Parks ordered that the store would remain open for four (4) more days. Thereafter, Park ordered the bed bug treatment to take place during a previously scheduled installation of shelving at the West Center Store.

5. A few months later, in July 2015, Goodwill management questioned Mr. Tremaine about using company tools for his personal use. Mr. Tremaine confirmed he occasionally used tools owned by Goodwill. He questioned management about other Goodwill employees who temporarily used company-owned property and tools for their personal use. Mr. Tremaine cited Parks as having used his company credit card to make personal purchases and McGree as utilizing the services of Karnes and Mr. Tremaine to install a dishwasher at McGree's personal residence during regular business hours and while each was on-the-clock at Goodwill. Nonetheless, Goodwill failed to reprimand any other employees than Mr. Tremaine for temporarily using company-owned property for personal use.

6. On July 10, 2015, Goodwill terminated Mr. Tremaine, but no other Goodwill employees, for using Goodwill's company tools for his personal use. Goodwill's

2

explanation was contrary to the protected bases applicable to Mr. Tremaine: (1) his age, (2) his sex, and (3) retaliation for Mr. Tremaine's internal complaint regarding the store's bed bug infestation. Further, none of Mr. Tremaine's co-workers were discharged for their temporary use of company property.

## VENUE & JURISDICTION

7. This matter arises under federal and state law. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, based on Mr. Tremaine's federal claims. The Court has supplemental jurisdiction of Mr. Tremaine's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in, and conducted in the District of Nebraska.

## PARTIES

9. Mr. Tremaine is a male, age 49. He is a citizen and resident of Omaha, Nebraska. Goodwill employed Mr. Tremaine and he worked at Goodwill's Omaha, Nebraska location for nearly four (4) years.

10. Goodwill is a Nebraska nonprofit organization with its principal office located at 4805 N. 72nd Street, Omaha, Nebraska 68134. Goodwill operates multiple locations throughout Nebraska and one in Iowa at which it collects and sells used clothing and housewares. According to Goodwill's website,

> **REAL WORK FOR REAL PEOPLE**
>
> Goodwill Industries, Inc., Serving Eastern Nebraska and Southwest Iowa, has been a leader in helping people fulfill their dreams through work since 1933. We train and employ people with disabilities and others who may be at a competitive disadvantage in the job market, such as at-risk youth.
>
> Our many employment and training services are funded through government agencies, grants, private support and proceeds from the sale of donated goods at our 17 convenient shopping and donating locations throughout the metro.

http://www.goodwillomaha.org/about/. Goodwill's District Office is located at 72nd & F Streets, Omaha, Nebraska.

**FACTUAL BACKGROUND**

11. Goodwill hired Mr. Tremaine on October 15, 2011 as Goodwill's Facilities Manager. In his position, Mr. Tremaine had numerous company-wide obligations and responsibilities including oversight of Goodwill's building systems such as mechanical, electrical, safety, and elevators, as well as maintenance of buildings and grounds. He was member of Goodwill's executive staff.

12. Mr. Tremaine's job performance was satisfactory for the entirety of his employment with Goodwill. In October 2014, Parks, COO, provided Mr. Tremaine's performance review and Mr. Tremaine's scores were exceptional.

13. Goodwill paid Mr. Tremaine an annual salary of $73,000 in 2013. That same year, Mr. Tremaine was able to review Goodwill's publication of management salaries. He was shocked to learn that two of his co-workers on the executive management team, McGree (Director of Retail) and Swanson-Russell (Director of Business Development) were paid salaries of $109,000 and $105,000, respectively.

4

14. Mr. Tremaine was alarmed at the discrepancy between his and McGree's and Swanson-Russell's salaries. While each of the three executive team members had different supervisors and varying job titles, each had company-wide responsibilities. The critical differences between Mr. Tremaine and McGree and Swanson-Russell are as follows: (1) Mr. Tremaine is male, while McGree and Swanson-Russell are females, and (2) in 2013, Mr. Tremaine was 46 years old, while McGree and Swanson-Russell was each in her 30's.

15. In March 2015, Mr. Tremaine met with certain members of the Goodwill executive team, including Parks, McGree, Caniglia, Hilgenkamp, Sloderbeck, Ellis and Karnes. Mr. Tremaine informed the group that Husker Pest Control discovered an infestation of Cimex Lectularius (commonly known as "bed bugs") at Goodwill's West Center Store. Mr. Tremaine recommended that the West Center Store be closed immediately for treatment of the bed bug infestation.

16. Parks refused. Instead, Parks ordered the West Center Store to remain open or four (4) more days, and it should only close during a prescheduled shelving installation. Parks ordered treatment of the West Center Store's bed bug infestation to take place concurrently with the shelving installation. Mr. Tremaine protested. He advised Parks that keeping the store open four (4) in the midst of a known bed bug infestation not only posed a threat to the public but constituted a public health violation. Parks again disregarded Mr. Tremaine's recommendation and informed Mr. Tremaine Goodwill would follow Parks' plan of action.

17. After the March 2015 executive meeting, Mr. Tremaine was subjected to a drastic change in treatment by Goodwill. From March 2015 to the end of his employment

with Goodwill, Mr. Tremaine was subjected to less favorable terms and conditions in his work. Parks monitored Mr. Tremaine's work assignments closely and was impatient, abrasive and curt in his communications with Mr. Tremaine. Mr. Tremaine was on edge because of the constant scrutiny and hypercritical nature of Goodwill's treatment.

18. On July 9, 2015, Caniglia called Mr. Tremaine into his office. Human Resources Manager Jennifer Roher ("Roher") also was present. When he arrived in Caniglia's office, Mr. Tremaine was interrogated about his use of Goodwill's tools, which Mr. Tremaine historically had borrowed for personal use and then returned. Mr. Tremaine confirmed that he had previously borrowed tools owned by Goodwill but that he always returned the tools afterward. Goodwill immediately took Mr. Tremaine's company keys and other company-issued items and informed Mr. Tremaine he was being placed under investigation.

19. Mr. Tremaine thought the interrogation and investigation was odd, considering numerous instances when other Goodwill employees used company-owned property for personal use and Goodwill took no action against them. In 2014, former Accounting Coordinator Jillian Zappa reported in her exit interview that Parks used his Goodwill credit card for personal use which was brought to the attention of Chief Financial Officer Pauli Bishop ("Bishop"). Bishop required Parks to reimburse Goodwill for the expenditures, but Goodwill did not discipline or terminated Parks. In July 2015, Karnes and Mr. Tremaine installed a dishwasher at McGree's personal residence on company time, and neither Karnes nor Mr. Tremaine was questioned or disciplined.

20. On July 10, 2015, Goodwill terminated Mr. Tremaine's employment with the company. Roher informed Mr. Tremaine he was being terminated because he borrowed

Goodwill-owned tools for personal use. Mr. Tremaine's termination was a pretext to hide Goodwill's true motivation for the decision based on protected characteristics: (1) Mr. Tremaine's age, (2) Mr. Tremaine's sex, and (3) Mr. Tremaine's internal complaint regarding Goodwill's illegal activity.

21. Mr. Tremaine timely filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC"), NEB 2-15/16-11-47162-RD, and the Equal Employment Opportunity Commission ("EEOC"), EEOC 32E-2016-00150, alleging age discrimination, sex discrimination and retaliation. The EEOC issued its Right to Sue letter on July 29, 2016. (A true and correct copy of the EEOC Right to Sue letter is attached as Exhibit A, and incorporated by this reference).

**GOODWILL DISCRIMINATED AGAINST ROSS F. TREMAINE BASED ON HIS AGE.**

22. Goodwill discriminated against Mr. Tremaine on the basis of his age. Goodwill violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, *et seq.*, as Amended ("ADEA"), and Section 48-1004 of the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. §§ 48-1004, *et seq.* ("NADEA").

23. The ADEA prohibits discrimination by employers against employees who are over 40 years of age.

> It shall be unlawful for an employer—
>
> (1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]

29 U.S.C. § 623(a) (1), (2).

24. Likewise, Nebraska law prohibits age discrimination against employees aged 40 or more. According to Section 48-1004, the Age Discrimination in Employment Act,

> (1) It shall be an unlawful employment practice for an employer:
>
> (a) To refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to the employee's terms, conditions, or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction[.]

Neb. Rev. Stat. § 48-1004(1) (a).

25. Goodwill did not reprimand or terminate younger employees who utilized Goodwill's property for personal use on a temporary basis. Other employees used Goodwill's time, credit cards, and property for their personal use but no adverse employment actions were taken against such younger employees.

26. Goodwill's actions, statements, and treatment of Mr. Tremaine demonstrate Goodwill violated state and federal law by treating him differently than younger employees and subjecting him to harsher treatment than younger employees. *See* 29 U.S.C. §§ 623, *et seq.*; Neb. Rev. Stat. §§ 48-1004, *et seq.*

## CLAIM I

## GOODWILL VIOLATED BOTH FEDERAL & NEBRASKA ADEA
**(29 U.S.C. § 623; Neb. Rev. Stat. § 48-1004 *et seq.*)**

27. Mr. Tremaine incorporates by reference Paragraphs 1-26 inclusive, as if fully set forth.

28. Mr. Tremaine can establish each of the elements of a prima facie case of age discrimination: (1) he is within the protected age group, (2) he met applicable job qualifications and legitimate expectations of the employer, (3) he was discharged, and (4) his age was a motivating factor in his termination. *Johnson v. Runyon*, 137 F.3d 1081, 1082 (8th Cir. 1998).

29. The ADEA "does not require that advanced age and substantial length of service *entitle* employees to special favorable consideration; it requires an employee within the protected age group not be the subject of discrimination because of his or her age." *Cova v. Coca-Cola Bottling Co. of St. Louis*, 574 F.2d 958, 960 (8th Cir. 1978) (emphasis added).[1]

30. Once a plaintiff states a prima facie case of disparate treatment, the employer defendant must articulate a legitimate non-discriminatory reason for terminating plaintiff. Plaintiff bears the ultimate burden by rebutting the employer's proffered rationale and demonstrating the stated reason is a pretext.

31. To meet this burden, plaintiff may show either that the "employment decision more likely than not was motivated by a discriminatory reason or by showing that

---

[1] The Nebraska Supreme Court has held that the analysis applied by federal courts under the ADEA also applies to state law claims under the NADEA. *See Allen v. AT&T Technologies, Inc.*, 423 N.W.2d 424, 228 Neb. 503 (Neb. 1988).

the employer's proffered reason is unworthy of credence." *Bell v. Bolger*, 708 F.2d 1312, 1318 (8th Cir. 1983).

32. Here, Mr. Tremaine's allegations satisfy the prima facie elements. He is 49-years old, and thus a member of the protected class under the ADEA and NADEA. He performed his job as a Facilities Director at a satisfactory level throughout his employment, receiving an exceptional performance review from his supervision, Parks, Goodwill's then-COO.

33. Mr. Tremaine was terminated from Goodwill on July 10, 2015. Goodwill's purported reason for Mr. Tremaine's termination was not consistently applied in comparable instances in which employees used Goodwill-owned property for personal uses on a temporary basis. In the other instances, Goodwill took no action against a comparable employee who was not in a protected age-group. Goodwill's offered explanation for Mr. Tremaine's termination constitutes a pretext for discharging him based on age.

WHEREFORE, Plaintiff Ross F. Tremaine requests judgment ordering an award of damages pursuant to 29 U.S.C. § 623, *et seq.*, and Neb. Rev. Stat. §§ 48-1004 and 1119(4) due to Goodwill's discriminatory termination of him based on age.

### GOODWILL DISCRIMINATED AGAINST MR. TREMAINE BASED ON HIS SEX

34. Mr. Tremaine incorporates by reference Paragraphs 1-33 inclusive, as if fully set forth.

35. Goodwill discriminated against Mr. Tremaine on the basis of his sex and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*, as Amended ("Title VII"), Section 48-1104(1) of the Nebraska Fair Employment Practice Act, as

Amended ("NFEPA"), The Equal Pay Act of 1963, 29 U.S.C. § 206(d), as Amended ("Equal Pay Act"), and Section 48-1221 of the Equal Pay Act of Nebraska ("EPAN").

36. According to Title VII, it is unlawful for an employer –

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex, * * *; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *.

42 U.S.C. § 2000e-3(a) (1991).[2]

37. Pursuant to The Equal Pay Act, no employer shall:

> discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1) (2007).[3]

38. Goodwill's actions and treatment of Mr. Tremaine, and Goodwill's unequal salary payment to his female co-workers show Goodwill violated federal law and Nebraska state law by discriminating against Mr. Tremaine on the basis of his sex. *See*

---

[2] Section 48-1104 of the NFEPA mirrors the language of the Title VII, 42 U.S.C. § 2000e-3(a). *See* Neb. Rev. Stat. § 48-1104 (Reissue 1993).
[3] Section 48-1221 of the EPAN mirrors the language of the Equal Pay Act, 29 U.S.C. § 206(d)(1). *See* Neb. Rev. Stat. § 48-1221 (1969).

42 U.S.C. § 2000e-3(a) (1991); Neb. Rev. Stat. § 48-1104 (Reissue 1993); 29 U.S.C. § 206(d)(1) (2007); *and* Neb. Rev. Stat. § 48-1221 (1969).

## CLAIM II

### GOODWILL VIOLATED
### FEDERAL & NEBRASKA TITLE VII AND EQUAL PAY ACT
**(42 U.S.C. § 2000e-3(a); Neb. Rev. Stat. § 48-1104; 29 U.S.C. § 206(d)(1); Neb. Rev. Stat. § 48-1221)**

### TITLE VII

39. Mr. Tremaine incorporates by reference Paragraphs 1-38 inclusive, as if fully set forth.

409. To state a prima facie case of reverse sex discrimination under Title VII, the plaintiff must show: "(1) that [he] is within the protected class; (2) that [he] was qualified to perform [his] job; (3) that [he] suffered an adverse employment action; and (4) that nonmembers of [his] class (persons…of the opposite gender in the Title VII sex discrimination context) were not treated the same." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999). The plaintiff must also show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminated against the majority." Mower v. Westfall, 177 F.Supp.2d 940, 947 (S.D. Iowa 2001), *quoting Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir.1997).

41. The purpose of Title VII, as explained in *Keathley v. Ameritech Corp.*, 187 F.3d 915 (8th Cir. 1999), "is to demonstrate that an 'adverse employment action occurred under circumstances which [give] rise to an inference of unlawful discrimination.'" *Keathley*, 187 F.3d at 921 (quoting *Wilson v. International Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995) (quotation marks omitted). Moreover, "[t]he *prima facie* case is 'generally sufficient to raise "an inference of discrimination only because the Court

presumes an employer's decisions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."'" *Id.* (quoted references omitted). The Eighth Circuit has modified the final element of a *prima facie* case of discrimination to be that the plaintiff "suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 980 (8th Cir. 2000).

42. Mr. Tremaine suffered from discriminatorily unfair treatment by Goodwill. Mr. Tremaine was terminated from his position as a Facilities Director purportedly because he borrowed Goodwill-owned tools for personal, temporary use. Yet, female Goodwill employees engaged in the same conduct and Goodwill, on numerous occasions, failed to reprimand, let alone terminate, the female employees.

43. Despite Mr. Tremaine's nearly four (4) years of satisfactory/exceptional job performance, Goodwill disgraced and embarrassed Mr. Tremaine by discharging him. Prior to July 10, 2015, Mr. Tremaine employed by Goodwill as the Facilities Director and performing at an exceptional level. Mr. Tremaine was committed to benefitting the Goodwill through his work and dedication. Goodwill responded to Mr. Tremaine's commitment by terminating him for inconsequential reasons, while female employees who committed the same acts were neither reprimanded or terminated.

### EQUAL PAY

44. Mr. Tremaine incorporates by reference Paragraphs 1-43 inclusive, as if fully set forth.

45. To state a *prima facie* case of sex discrimination under the Equal Pay Act, "an employee must prove that her employer discriminated on the basis of sex by paying

different wages to men and women who performed equal work." *Brown v. Fred's, Inc.*, 494 F.3d 736, 740 (8th Cir. 2007).

46. "'Equal work' means work 'on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Brown*, 494 F.3d at 740 (quoting 29 U.S.C. § 206(d)(1)).

47. Mr. Tremaine worked for Goodwill for nearly four (4) years when Goodwill terminated him. Mr. Tremaine's annual salary as the Facilities Director prior to his termination was $73,000. During the same time-period, McGree and Swanson-Russell received annual salaries of $109,000 and $105,000, respectively.

48. The jobs performed by Mr. Tremaine, McGree, and Swanson-Russell each required equal skill, effort, and responsibility. Despite having different job titles, all three had company-wide responsibilities and were members of the Goodwill executive staff. The only relevant differences in their employment were: (1) Mr. Tremaine's salary was substantially less than the salaries of McGree and Swanson-Russell, and (2) Mr. Tremaine is a male, and McGree and Swanson-Russell are females.

WHEREFORE, Plaintiff Ross F. Tremaine requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-3(a), Neb. Rev. Stat. § 48-1104, 29 U.S.C. § 206(d)(1), and Neb. Rev. Stat. § 48-1221 based on Goodwill's discrimination against him due to his sex.

## CLAIM III

## RETALIATION BY GOODWILL
## IN VIOLATION OF TITLE VII & NEBRASKA FEPA
### (42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1101 *et seq.*)

49. Mr. Tremaine incorporates by reference Paragraphs 1-48 inclusive, as if fully set forth.

50. Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires the Plaintiff to show (1) that he engaged in a statutorily protected activity, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007).

51. Before and after March 2015, Mr. Tremaine was an exemplary employee. He performed his job at better than a satisfactory or "meets expectations" level. In fact, Mr. Tremaine received an exceptional job performance review in October 2014.

52. In March 2015, Mr. Tremaine alerted the Goodwill executive board that the store facility had a bed bug infestation. Mr. Tremaine recommended that the store be closed immediately for treatment because he knew the infestation created a public health risk for any Goodwill customer entering the store. Further, he also was aware that knowingly keeping the store open while the facility was infested with bed bugs was a public health code violation.

53. Goodwill's executive management refused to follow Mr. Tremaine's recommendation. Goodwill kept the store open for four (4) business days after he provided notice of the illegal status of the West Center Store. Instead, Goodwill only closed the West Omaha Store for a prescheduled shelving installation and the treatment for the bed bug infestation took place during that installation. Goodwill refused to close the store to treat the bed bug infestation immediately so its customers were protected and, instead, scheduled the bed bug treatment when it would be convenient for the Goodwill to conduct the treatment without alerting the public.

54. In response to Mr. Tremaine's recommendation to the executive board, Goodwill criticized him and subjected him to a higher level of supervision and monitoring. Goodwill's COO, Parks, continually questioned Mr. Tremaine about his work assignments and communicated to Mr. Tremaine in an abrasive, curt, and demeaning manner. Goodwill made Mr. Tremaine feel uncomfortable and ridiculed him at work after he brought his complaint about the bed bug infestation to executive management.

55. On July 9, 2015, only a few months after Mr. Tremaine's complaint and recommendation to the executive board, Goodwill began interrogating Mr. Tremaine and conducted an investigation on his job performance. The basis for the interrogation and investigation was that Mr. Tremaine borrowed company-owned tools for his personal use. Mr. Tremaine admitted to Goodwill that he occasionally did this, but he also pointed out that he returned the tools after borrowing them.

56. On July 10, 2015, Mr. Tremaine was terminated from his position as Goodwill's Facilities Director. The basis on which Goodwill Mr. Tremaine's termination was his temporary use of company-owned tools. The reasoning given by Goodwill was

pretextual and in direct conflict with the manner in which Goodwill treated numerous other employees who also utilized company-owned property on a temporary basis.

57. The timing of Mr. Tremaine's termination as well as the manner in which he was treated leading up to his termination demonstrate the true reason Goodwill management retaliated against him by discharging him: Mr. Tremaine complained about the West Center Store's bed bug infestation to the executive board, and he opposed Goodwill management's plan to keep the West Center Store open to the public while the store was still infested with bed bugs. There is no legitimate basis on which Goodwill can argue Mr. Tremaine's termination was for anything but his outspoken opposition to Goodwill's improper and illegal handling of the West Center Store's bed bug infestation.

WHEREFORE, Mr. Tremaine requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1119(4) based on Goodwill's retaliation against Mr. Tremaine, resulting in his discharge.

## **CONCLUSION**

Mr. Tremaine requests judgment on his behalf based on the unequal and discriminatory workplace practices by Goodwill, and the retaliation he suffered for complaining about the Goodwill facility's bed bug infestation.

## **REQUEST FOR RELIEF**

WHEREFORE, Mr. Tremaine requests judgment in his favor and awarding:

1. Damages for Mr. Tremaine's lost and future wages due to his unjustified and discriminatory discharge;

2. Damages for Mr. Tremaine's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Mr. Tremaine's out-of-pocket expenses for medical treatment attributable to his discharge;

4. Punitive damages for Goodwill's knowing violation of federal discrimination laws;

5. Costs and attorney fees, as allowed by law; and

6. Such further and equitable relief as this Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

Date: October 26, 2016

**ROSS F. TREMAINE**, Plaintiff,

By: /s/ Terry A. White
Terry A. White, NE Bar #18282
**CARLSON & BURNETT, LLP**
17525 Arbor Street
Omaha, Nebraska 68130
Direct: (402) 682-8006
Main: (402) 934-5500
terry@carlsonburnett.com