# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROSS F. TREMAINE, | |
| Plaintiff, | 8:16CV488 |
| vs. | |
| GOODWILL INDUSTRIES, INC., a Nebraska nonprofit corporation; | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 38, filed by Defendant Goodwill Industries, Inc. For the reasons stated below, the Motion will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Goodwill hired Plaintiff Ross Tremaine as a Facilities Manager on October 17, 2011. In this position, Tremaine oversaw the maintenance, efficiency, and safety of Goodwill's buildings, which included managing custodial staff and procuring furniture, utilities, and equipment. In February of 2014, Randy Parks, Tremaine's immediate

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.

supervisor, promoted him to Facilities Director. He retained all of his responsibilities as Facilities Manager and took on the added responsibilities of serving on the Executive Staff and Crisis Management Team. He became involved in budget planning, assisted in developing safety programs, and led a job hazard analysis of the facilities under his care. He also oversaw the performance of vendor contracts for Goodwill's building systems and operations. One employee, Brett Karnes, directly reported to Tremaine and as many as four employees indirectly reported to him while he was the Facilities Director. Before working at Goodwill, Tremaine worked in the facilities industry for twenty years, but had no formal education beyond high school.

On or about February 9, 2015, Kent Caniglia was promoted to Director of Risk Management and became Tremaine's immediate supervisor. Caniglia reported directly to Parks. On July 10, 2015, Parks decided to terminate Tremaine after Karnes verbally reported to Caniglia that Tremaine had been removing company tools from the workplace and taking them home for his own personal use without permission and against company policy. Following Karnes's report, Caniglia and Jennifer Rohr, the Human Resources Director, began an investigation and interviewed Tremaine regarding the contents of the report. During the interview, Tremaine conceded he had taken a table saw, hand saw, chop saw, and compressor, and that he had been in possession of the compressor for at least two months. Tremaine Depo., ECF No. 41-2, Page ID 306, 352. Though Tremaine disputes this fact, Karnes reported that Tremaine had instructed him to repurchase, on Goodwill's behalf, some of the tools he had taken home. After reviewing the investigation's findings, Parks concluded Tremaine's conduct clearly violated company policy because he made personal use of company tools for

2

extended periods of time and deprived other employees of their use at work. He also concluded that the circumstances indicated Tremaine intended to keep some tools indefinitely. Tremaine identified Gale Husk and Karnes as other employees who had, on prior occasions, also made personal use of company tools. Karnes and Caniglia absorbed Tremaine's job responsibilities after he was terminated.

When Tremaine started at Goodwill as the Facilities Manager on October 17, 2011, he was compensated at an annual salary of $60,000. He received several performance-based, periodic raises and when he was promoted to Facilities Director in February of 2014, his salary increased to $71,150. He received his last annual raise before he was terminated on October 17, 2014, which increased his salary to $73,300. Two female employees, Erin Swanson-Russell and Shannon McGree, also held director positions at Goodwill throughout the time Tremaine was Facilities Director. Swanson-Russell was hired as the Director of Planned Giving on or about July 27, 2012, at an annual salary of $105,900. Goodwill changed her job title to Development Director[2] on February 10, 2014, and by July 27, 2015, her salary had increased to $118,500. McGree was hired on October 11, 2004, as an Assistant Store Manager at an annual salary of $24,000. On September 17, 2011, she was promoted to Retail Sales Director and her salary was increased to $62,500. Like other Goodwill employees, she received annual performance-based raises and by September, 17, 2014, her salary was $72,275. As Retail Sales Director, McGree was also eligible to receive monthly and quarterly bonuses based on store revenue under the Retail Management Bonus Program.

---

[2] The change in Swanson-Russell's job title was not considered a promotion and her responsibilities remained "relatively the same." Def.'s Br., ECF No. 40, Page ID 212.

3

Neither Tremaine nor Swanson-Russell was eligible for bonuses under the Retail Management Bonus Program.

As the Development Director, Swanson-Russell was responsible for managing Goodwill's overall fundraising efforts, leading resource and community development efforts, and establishing fundraising strategies, policies, and goals. ECF No. 41-16, Page ID 613-17. She was responsible for cultivating donor relationships, applying for grant funding, and "implementing a Legacy Society for persons who commit resources to Goodwill" as part of an estate plan. *Id.* Her position required a bachelor's degree, but preferred a master's degree in a relevant area of study, and it is undisputed she possessed both. Pl.'s Br., ECF No. 44, Page ID 655. As the Retail Sales Director, McGree oversaw retail operations for seventeen Goodwill stores, including the collection, processing, distribution, and sales of donated goods. She was responsible for the overall fiscal viability of each store and the supervision of over 200 retail employees. This position preferred a bachelor's degree in a field related to retail, and McGree had a bachelor's degree in education.[3]

Tremaine claims Goodwill unlawfully discriminated against him by paying him less than Swanson-Russell and McGree and by terminating his employment because of his age and sex. At termination, he was forty-eight years old. Specifically, he claims Goodwill's decisions regarding his wages and termination violated the Equal Pay Act (EPA), 29 U.S.C. § 206(d)(1); the Equal Pay Act of Nebraska (EPAN), Neb. Rev. Stat. § 48-1221(1); Title VII, 42 U.S.C. § 2000e-2(a)(1); the Nebraska Fair Employment

---

[3] Despite stating that it is "[u]ndisputed" McGree had a bachelor's degree in "a related field," Tremaine subsequently argued that education was not relevant to her position. *Compare* Pl.'s Br. ¶ 41, ECF No. 44, Page ID 650, *with* Pl.'s Br., ECF No. 44, Page ID 669-70.

Practices Act (NFEPA), Neb. Rev. Stat. § 48-1104(1); the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1); and the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1004(1)(a).

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's

5

case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

Tremaine has failed to establish a prima facie case for unequal pay under the EPA and the EPAN. There is also no evidence that Goodwill intentionally discriminated against Tremaine because of his age or sex.

**I. Equal Pay Claims**

To establish a claim for sex-based wage discrimination under the EPA or EPAN[4], "a plaintiff must show by a preponderance of the evidence that (1) [he] was paid less than a [woman] employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) which were performed under similar working conditions." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 421-22 (8th Cir. 2017) (quoting *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002)); *see also* 29 U.S.C. § 206(d); 29 C.F.R. §§ 1620.13-1620.17. An employer may "establish an affirmative defense by demonstrating that "different payment to employees of opposite sexes 'is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Dindinger*, 853 F.3d at 422 (quoting 29 U.S.C. § 206(d)(1)). Tremaine claims the disparity between his wages and those paid to Erin Swanson-Russell and Shannon McGree violated the EPA and EPAN.

**A. Erin Swanson-Russell**

Tremaine cannot establish a prima facie case because he and Swanson-Russell did not perform substantially equal work in jobs requiring equal skill or responsibility. 29 U.S.C. § 206(d). "In a wage discrimination case, although the jobs being compared

---

[4] Section 48-1221(1) of the EPAN "is patterned after the federal EPA, 29 U.S.C. § 206(d), [and] it is appropriate to look to federal court decisions construing 29 U.S.C. § 206(d) for guidance with respect to § 48-1221(1)." *Knapp v. Ruser*, 901 N.W.2d 31, 46 (Neb. 2017).

need not be identical, they must be substantially equal as actually performed." *Hill v. City of Pine Bluff*, 696 F.3d 709, 712 (8th Cir. 2012) (citing *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 578 (8th Cir. 2006)). "Job classifications and titles are not dispositive." *Hill*, 696 F.3d at 712 (citing *Tenkku v. Normandy Bank*, 348 F.3d 737, 739 (8th Cir. 2003)).

> Whether two jobs entail equal skill, equal effort, or equal responsibility requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job.

*Simpson*, 441 F.3d at 578 (quoting *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981)).

Tremaine provided no evidence of how Swanson-Russell actually performed her job. The only evidence of what her job entailed was provided in Goodwill's listing of expectations for the individual who occupies the Development Director position and there are certain aspects of the position—public relations, community development, creating fund raising strategies, implementing donor programs, soliciting donations, cultivating donor relationships—that distinguish it, significantly, from the duties of Tremaine's facilities positions. *See Horn v. Univ. of Minn.*, 362 F.3d 1042, 1046 (8th Cir. 2004) (finding two assistant coaching positions were not substantially equal where one involved "recruiting and public relations duties"); *see also* ECF No. 41-16. Although he performed some budgeting tasks and managed vendor contracts, there is no evidence that Tremaine performed similar public relations, solicitation, or strategic planning tasks. Further, it is undisputed that there was a substantial education disparity

associated with Tremaine's position and Swanson-Russell's position. Her position preferred, and she had, a relevant master's degree while Tremaine's positions required no post-secondary education[5] and he had no formal education beyond high school. Based on this evidence, no rational juror could find that Tremaine and Swanson-Russell performed equal work in jobs requiring equal skill and responsibility. *See Younts v. Fremont Cty.*, 370 F.3d 748, 753 (8th Cir. 2004) (affirming summary judgment on plaintiff's EPA claim based on insufficient evidence comparing the plaintiff's job to a male comparator's job).

### B. Shannon Mcgree

Tremaine also failed to establish a prima facie case with respect to any alleged disparity between his pay and McGree's pay because he provided no evidence that shows McGree was paid more than he was paid. Although Tremaine's base salary as Facilities Director was greater than McGree's base salary as Retail Sales Manager,[6] his equal-pay claim appears to be based on additional pay McGree received under the Retail Management Bonus Program. It is undisputed McGree received monthly and quarterly retail bonuses in addition to her base salary, but Tremaine provided no statement of fact or citation to any evidence regarding the specific number of bonuses

---

[5] Although the job listing for the Facilities Management position stated that "[i]n lieu of Bachelor's degree, Goodwill will accept a related Associate's Degree plus five years of relevant work experience[,]" Tremaine was not required to have an associate's degree or any other post-secondary education. ECF No. 41-2, Page ID 330-31. The job listing for Facilities Director preferred an associate's degree in a related field. ECF No. 41-2, Page ID 337.

[6] Goodwill promoted Tremaine from Facilities Manager to Facilities Director on February 17, 2014, at an annual salary of $71,150. At that time, McGree had been Retail Sales Director since September 17, 2011, and was being paid an annual salary of $70,165. On September 17, 2014, McGree's salary was raised to $72,275, and on October 17, 2014, Tremaine's salary was raised to $73,300. Thus, Tremaine was paid a higher base salary than McGree for all but one month of his tenure as Facilities Director.

she received or the amount of those bonuses. He made only a general, unsubstantiated claim that McGree was paid "more than $125,000" as Retail Sales Director. Pl.'s Br., ECF No. 44, Page ID 657. This Court's local rules and Fed. R. Civ. P. 56 require that parties "cite to specific portions of the record to support" their arguments, and because Tremaine has failed to do so, he cannot establish the first element of a prima facie EPA claim. *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015) (citing *Tolen v. Ashcroft*, 377 F.3d 879, 883 n.3 (8th Cir. 2004)); *see also* NECivR. 56.1(b)(1).

Even if Tremaine had substantiated this factual assertion with evidence, no rational juror could find that he and McGree performed equal work in jobs that required equal skill and responsibility. McGree was responsible for the revenue generated at seventeen Goodwill stores as well as the expenses and ultimate financial viability of each store. She also supervised over 200 retail employees. There is no evidence that Tremaine's job, as performed, included equal financial or supervisory responsibilities. Nor is there evidence that his job required the skills associated with maintaining the financial viability of seventeen retail stores.

Further, Goodwill's Retail Management Bonus Program is based on merit and "measures earnings by quantity or quality of production." 29 U.S.C. § 206(d)(1); *see also* Goodwill Industries Bonus Programs, ECF No. 41-11(providing bonus incentives for achieving specific, pre-set goals); *Hoover v. Neb. ex rel. Neb. Dep't of Admin. Servs.*, No. 4:12CV3197, 2013 WL 5308294, *at 9 (D. Neb. Sept. 19, 2013). As the Facilities Director, Tremaine was not eligible for this particular bonus program and there

is no evidence that he was qualified to work in retail. Thus, Goodwill has an affirmative defense to Tremaine's unequal-pay claim based on McGree's compensation.

Accordingly, Tremaine's claims under the EPA and the EPAN will be dismissed.

## II. Sex Discrimination Claims

It is unlawful, under Title VII, for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2. The NFEPA is patterned after Title VII. *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (quoting *City of Fort Calhoun v. Collins*, 500 N.W.2d 822, 825 (1993)). Tremaine claims Goodwill violated Title VII by intentionally paying him less than Swanson-Russell and McGree, and by terminating him because of his sex.

### A. Wage Discrimination

Because Tremaine failed to establish a prima facie case under the EPA, summary judgment is also appropriate on his sex-based, intentional wage discrimination claims under Title VII and the NFEPA. *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citing *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003)); *see also Davis v. Crescent Elec. Supply, Co.*, 200 F. Supp. 3d 875, 883 (D. Minn. 2016).

### B. Discriminatory Discharge

Tremaine also failed to establish a prima facie case of reverse sex discrimination because there is no evidence that Goodwill is the unusual employer that discriminates against men, and because there is no evidence that supports an inference of discrimination on the basis of sex.

There is no direct evidence of sex discrimination in connection with Tremaine's termination. Absent direct evidence, courts "evaluate[ ] a plaintiff's discrimination claim under the *McDonnell Douglas* burden-shifting framework." *Moody v. Vozel*, 771 F.3d 1093, 1097 (8th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973)). That framework requires the plaintiff first to establish a prima facie case with respect to his or her claim. *Bunch v. Univ. of Ark. Bd. or Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (quoting *Moody*, 771 F.3d at 1096). "If the plaintiff satisfies the prima facie case, the burden shifts to the employer to provide a 'legitimate, non-discriminatory justification for its adverse employment action.'" *Id.* "If the employer meets this burden, the plaintiff must 'prove the employer's justification is a mere pretext for discrimination.'" *Id.*

"To establish a prima facie case of sex discrimination, [a plaintiff] must show she: '(1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class.'" *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)). Because Tremaine's claim is one for reverse discrimination, he "must also show that 'background circumstances support the suspicion that [Goodwill] is that unusual employer who discriminates against the majority.'" *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004)); *see also Moody*, 771 F.3d at 1097. Tremaine can "show suspicious background circumstances by showing evidence that [Goodwill] is inclined to discriminate invidiously

against males or something 'fishy' about the facts that raises an inference of discrimination." *Wood v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

Tremaine claims Goodwill is the unusual employer that discriminates against men because three female employees regularly received bonuses pursuant to Goodwill's established bonus program for retail employees; thus, Goodwill's payment structure prioritized women. Tremaine has provided no evidence to support this argument, and the Court cannot infer that Goodwill discriminated against men based on the fact that it paid three women retail bonuses. There is no evidence that retail bonuses were influenced by sex or reserved for women. Thus, Tremaine has presented no background circumstances which support a suspicion that Goodwill is the unusual employer that discriminates against men.

Nor is there any evidence Tremaine suffered disparate treatment that would give rise to an inference of sex discrimination. Tremaine contends he was treated less favorably than a female employee, McGree, because he was terminated for regularly making personal use of company tools, but she was not terminated for asking Tremaine and Karnes to help install a dishwasher at her home, although they used a company van and tools to complete the installation. This argument fails to demonstrate disparate treatment. Neither McGree nor Tremaine was reprimanded for the dishwasher installation; it was not cited as a reason for Tremaine's eventual termination; and there is no evidence that McGree kept company equipment or tools in her possession for extended periods of time without permission. As such, they were treated the same with respect to the dishwasher installation, and Tremaine was terminated for separate

13

misconduct that McGree never committed. Moreover, the van and the tools were returned after the dishwasher installation and Tremaine provided no evidence that McGree asked or instructed him and Karnes to use Goodwill equipment. No inference of sex discrimination can be drawn from this evidence, and Tremaine has failed to present a prima facie case.

Tremaine also asserts that other male employees made personal use of company tools and the practice was widespread among Goodwill's workforce. Tremaine may believe this suggests his termination was unfair, but it provides no evidence to support an inference of intentional sex discrimination. *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) ("[A] federal court is not a super-personnel department with authority to review the wisdom or fairness of business judgments made by employers.").

There is also no evidence that Goodwill's articulated reason for his termination was a pretext for sex discrimination. Goodwill maintains it terminated Tremaine because he regularly took company tools and equipment home for his own personal use in violation of company policies. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (stating "violations of company policy are legitimate, nondiscriminatory reasons for termination"); *see also* Policy, ECF No. 41-2, Page ID 348-49. To show pretext, Tremaine argues that McGree and other male employees also made personal use of company tools and equipment without consequence.

"A plaintiff may show pretext, among other ways, by showing that an employer . . . treated similarly-situated employees in a disparate manner . . . ." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125-26 (8th Cir. 2017) (quoting *Schaffhauser*, 794

14

F.3d at 904). "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards*, 860 F.3d at 1126 (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014)). The employees used for comparison must be "similarly situated in all relevant respects." *Id.* They also "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

There is no evidence that McGree, or any other employee, engaged in the same conduct as Tremaine without any mitigating or distinguishing circumstances. Tremaine took company tools home on multiple occasions, without permission. Tremaine Depo., ECF No. 42-2, Page ID 306-07, 352. When human resources interviewed him regarding his personal use of company equipment, he had been in possession of a compressor for at least two months and another employee reported that Tremaine instructed him to repurchase tools that Tremaine had in his possession. *Id.* It was reasonable for Parks to conclude that Tremaine took some tools with no intention of returning them. There is no evidence Parks had knowledge of any other Goodwill employee who engaged in this type of conduct and failed to terminate him or her.

Accordingly, Tremaine's claims under Title VII and the NFEPA will be dismissed.

### III. Age Discrimination Claims

The ADEA makes it unlawful for an employer to "discharge . . . or otherwise discriminate against any individual with respect to his compensation . . . because of such individual's age." 29 U.S.C. § 623(a). The NADEA "is interpreted in conformity with the ADEA." *Shultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 954 (8th Cir.

2010) (citing *Humphrey v. Neb. Pub. Power Dist.*, 503 N.W.2d 211, 217 (Neb. 1993)). "A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (quoting *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009)). Tremaine has presented no direct evidence of age discrimination; thus, the *McDonnell Douglas* framework is applicable. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012).

### A. Wage Discrimination

To establish a prima facie case of age-based wage discrimination, Tremaine must show: "(1) he is over 40; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) substantially younger, similarly situated employees were treated more favorably." *Onyiah*, 684 F.3d at 719 (citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010)). "At all times, [Tremaine] retains the ultimate burden of persuasion that 'age was the "but-for" cause' of his lesser salary." *Onyiah*, 684 F.3d at 719 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

Other than identifying Swanson-Russell and McGree as younger employees who were paid more than he was paid, Tremaine provided no evidence to support an inference that his age was the but-for cause of Goodwill's decision to pay him less. *See Onyiah*, 684 F.3d at 719 ("[Plaintiff] does not identify any evidence that supports an inference that age was the 'but for' cause of his salary, beyond pointing to younger [employees] who are paid more."). On the day he was terminated, Tremaine was forty-eight years old, Swanson-Russell was thirty-five, and McGree was thirty-eight. As the

Court previously noted, Tremaine performed fundamentally different job functions than Swanson-Russell and McGree, with substantially different skill, responsibility, and education requirements. Thus, the fact that he was paid less than they were paid does not, by itself, permit the inference that but for his age Tremaine would have been paid a higher wage. Further, Tremaine made no effort to demonstrate that Goodwill's reasons for paying Swanson-Russell and McGree higher wages—they performed different jobs requiring greater responsibility, education, and skill—was a pretext for intentional age discrimination. Accordingly, his wage discrimination claims under the ADEA and the NADEA will be dismissed.

### B. Discriminatory Discharge

"A prima facie age-discrimination claim under the ADEA requires that the plaintiff show (1) she 'was at least 40 years old; (2) was qualified to perform her job; (3) was terminated; and (4) was replaced by another person sufficiently younger to permit the inference of age discrimination.'" *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1159 (8th Cir. 2013); *see also Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). Ultimately, age must have been "the but-for cause of the employment decision." *Hilde*, 777 F.3d at 1003 (citing *Gross*, 557 U.S. at 176).

After his termination, Tremaine's job responsibilities were assumed by two older Goodwill employees, Karnes and Caniglia. As such, Goodwill contends Tremaine's age-based discriminatory discharge claim must be dismissed as a matter of law. *See Holmes v. Trinity Health*, 729 F.3d 817, 822 (8th Cir. 2013) (finding the plaintiff failed to establish a prima facie case of age discrimination where a specific individual "assumed almost all of [the plaintiff's] job functions"). Citing a case which did not address the

ADEA at all, *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984), Tremaine argues that to establish a prima facie case he only has to show disparate treatment between himself and a younger, similarly situated Goodwill employee. To show disparate treatment, he again argues that McGree was not terminated for asking Tremaine and another male employee to install a dishwasher at her home.

Tremaine failed to establish a prima facie case because he produced no evidence that he was replaced by someone younger; or that younger Goodwill employees engaged in substantially similar misconduct without termination, or that age played any role in Parks's decision to terminate him. Tremaine also has failed to demonstrate that the explanation for his termination was a mere pretext for intentional age discrimination. As the Court previously explained, there is no evidence that another employee "dealt with the same supervisor, [was] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* Tremaine's claims for discriminatory discharge under the ADEA and the NADEA will, therefore, be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 38, filed by Defendant Goodwill Industries, Inc., is granted;

2. This action is dismissed, with prejudice;

3. A separate judgement will be entered.

Dated this 31st day of May, 2018.

>BY THE COURT:
>
>s/Laurie Smith Camp
>Chief United States District Judge